## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN HARROD,** | : | **Civil No.  1:24-cv-01951** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

### I.      Introduction

This case calls to mind a basic tenet of Social Security case law.  In this field,
it is axiomatic that "when evaluating medical opinions 'the ALJ may choose whom
to credit but cannot reject evidence for no reason or for the wrong reason.'" Mercado
v. Kijakazi, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022) (quoting Morales v. Apfel,
225 F.3d 310, 317 (3d Cir. 2000)). In this case we are presented with an ALJ decision
which, inexplicably, rejects a medical opinion for no reason. The plaintiff, Karen

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano
should be substituted as the defendant in this suit. No further action need be taken to
continue this suit by reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

1

Harrod, suffered from an array of severe impairments including breast cancer, peripheral neuropathy, obesity, and diabetes mellitus. (Tr. 20). A consultative examining expert, Nurse Practitioner Karena Hammon, reported that the diabetic neuropathy would limit Harrod to only occasional handling with her upper extremities, a medical opinion that would prevent her from performing her past relevant work which required frequent handling and reaching. (Tr. 865).

Yet, the ALJ found that Harrod was capable of performing her past relevant work. (Tr. 27). In order to reach this result, therefore, it was incumbent upon the ALJ to provide some reason for discounting NP Hammon's medical opinion. And this the ALJ failed to do. Instead, there is an extraordinarily enigmatic aspect to this portion of the ALJ's decision. After carefully detailing NP Hammon's clinical findings and opinions and thoroughly addressing the ways in which that opinion was well supported, the ALJ's decision states: "However, Ms. Hammon's opinion is not consistent with . . . ." (Tr. 27). But this thought is never completed by the ALJ and we are left at sea trying to understand where NP Hammon's medical opinion is unpersuasive because what follows in the decision is an entirely unrelated sentence fragment which discusses some other medical opinion. (Id.) Because of this profound, but perhaps inadvertent, mistake the ALJ's ruling literally provides no reason for discounting NP Hammon's medical opinion.

2

This was error, and since NP Hammon's opinion would have potentially precluded Harrod from returning to her past employment, the error is prejudicial given the ALJ's determination that the plaintiff could return to her past relevant work. Accordingly, we will remand this case for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case[2]

On September 25, 2021, Karen Harrod filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 24, 2021. (Tr. 18). According to Harrod she was disabled due to the combined effects of an array of impairments, including breast cancer, peripheral neuropathy, obesity, and diabetes mellitus. (Tr. 20). Harrod was born on October 19, 1962, and was 58 years old at the time of the alleged onset of her disability, making her a worker of advanced age under the Commissioner's regulations. (Tr. 60).

Harrod had past relevant work as a customer host. (Tr. 27). Notably, the Dictionary of Occupational Titles, the benchmark standard used by the Commissioner for assessing job skills in disability cases, states that this job requires

---

[2] Harrod raises a number of issues on appeal, but because we find that the failure to fully address Nurse Practitioner Hammon's opinion compels a remand we are focusing our factual discussion the critical aspects of this medical opinion evidence.

3

frequent handling and reaching, between 1/3 to 2/3 of the time. 352.667-010 Host/hostess, DICOT 352.667-010, 1991 WL 672913 (1991).

With respect to these impairments, Harrod explained that the severe neuropathy she experienced limited her ability to stand, walk, reach, finger and handle. As the ALJ explained:

> The claimant testified that she experiences severe neuropathy in her hands and feet. She experiences high blood sugar levels due to her diabetes, a lot of times her blood sugar level was high while she was received chemotherapy treatment, and her most recent A1C level was ten. She experiences constant pain in her feet, she experiences the pain in her feet at a level of seven on a scale of one to ten, the pain in her feet is worse at night, and the more she walks, the more pain she experiences in her feet. She stays off her feet, soaks her feet, and takes prescribed medication (Percocet) to alleviate the pain her feet. She soaks her feet with Epsom salt two to three times a day for twenty to thirty minutes and she does so after breakfast (i.e., 11:30 am), before dinner (i.e., 4:00 pm), and before bed (i.e., 7:30 pm or 8:00 pm). She cannot wear socks or "closed" shoes because of the swelling that she experiences in her feet and she has to wear open toe sandals with adjustable straps because of the swelling that she experiences in her feet. She used a cane in the past but it did not help and other things would hurt more when she used the cane.
>
> The claimant also testified that she does not sit for more than two hours in a day and she is only able to sit for one to two hours at one time due to discomfort/pain. She is only able to stand for twenty to thirty minutes at one time on a "good day". She is only able to walk on a flat surface for maybe thirty minutes on a "good day" and maybe longer if she has a cart on which she can lean. She needs to take breaks from chores because of pain and she is only able to do chores that require her to be on her feet for fifteen to twenty minutes and then she

4

has to sit down. She has difficulty gripping heavier things such that she needs to use both hands to lift a gallon of milk.

*********************************************************

As to the claimant's severe physical impairments, the claimant alleged experiencing symptoms of fatigue, and pain, numbness, and swelling of the feet, and pain and numbness in her hands (Exhibits 2F, 4F, 7F, 8F, 13F, 15F, 17F, and Testimony of Karen Harrod). Additionally, the claimant's medical records indicate the claimant has a body mass index greater than thirty; the claimant has been assessed with a clinical examination finding of an unsteady gait; and the claimant was observed to be unable to walk on her heels or toes without losing her balance, to lose her balance when attempting to tandem, and to squat seventy percent (Exhibit 13F).

(Tr. 22-23).

This severe peripheral neuropathy led Harrod's treating physician, Dr. Joseph Kannarkatt, to opine in June of 2023 that she was totally disabled. (Tr. 876-879). Additionally, in October of 2022 a consulting, examining expert, Nurse Practitioner Karena Hammon, evaluated Harrod's physical capabilities. (Tr. 863-874). As a result of this independent physical examination, NP Hammon concluded that Harrod was limited to only occasional handling, fingering and feeling. (Tr. 865). This specific medical opinion precluded Harrod from returning to her past work as a hostess since that work requires frequent handling. 352.667-010 Host/hostess, DICOT 352.667-010, 1991 WL 672913 (1991).

5

It was against this backdrop that Harrod's case came to be considered by the ALJ.

On January 3, 2024, an administrative hearing was conducted in Harrod's case. (Tr. 34-59). Harrod and a Vocational Expert testified at this ALJ hearing. (Id.) In the course of this hearing the Vocational Expert specifically testified that if Harrod was limited to occasional handling—the limitation found by Nurse Practitioner Hammon—then she would be unable to perform her past work as a hostess. (Tr. 57). Given this testimony which indicated that NP Hammon's handling restrictions would not allow Harrod to perform her past work, the ALJ could not deny Harrod's claim at Step 4 of the sequential analysis based upon a finding that she could perform her past relevant work without first explaining why this restriction was unpersuasive.

Following this hearing, on January 24, 2024, the ALJ issued a decision denying Harrod's disability application. (Tr. 15-28). In that decision, the ALJ first concluded that Harrod met the insured status requirements of the Social Security Act through December 31, 2026, and had not engaged in substantial gainful activity since January 24, 2021, the alleged onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Harrod had the following severe impairments: breast cancer, peripheral neuropathy, obesity, and diabetes

mellitus. (Id.)  At Step 3 the ALJ determined that none of these impairments met or medically equaled the severity of any of the listed impairments. (Tr. 21-22).

Between Steps 3 and 4 the ALJ concluded that Harrod retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). She can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can sit, stand, or walk six hours each per eight-hour day. She is limited to frequent ramps and stairs and frequent balance and stoop. She is limited to occasional ladders, ropes, and scaffolds. She can have no concentrated exposure to extreme cold, extreme heat, wetness, vibration, unprotected heights, and moving machinery parts.

(Tr. 22).

Notably, this RFC did not address the extent to which Harrod, who suffered from severe neuropathy, could reach, handle, feel or finger. The ALJ then found at Step 4 that Harrod was capable of performing past relevant work as a customer host, DOT#352.667-010, actually performed and generally performed at the light exertional level, semi-skilled, SVP3. (Tr. 27). The ALJ made no further Step 5 findings.

With the ALJ's decision framed in this fashion as a Step 4 determination that Harrod could return to her past relevant work as a hostess, it was incumbent upon the ALJ to address and explain why NP Hammon's limitation of Harrod to only

7

occasional handling—a limitation that the Vocational Expert testified preluded her

return to this prior work—was unpersuasive.

On this crucial score, the ALJ's decision failed.

The ALJ's analysis of NP Hammon's began with a thorough description of

the medical opinion's findings, including the prior work-preclusive restriction to

occasional handling, stating that:

> Karena A. Hammon NP, completed an opinion on October 26, 2022 that indicates the claimant has the following limitations: occasionally lift and carry up to twenty pounds; sit for four hours at one time without interruption and sit for a total of four hours during an eight hour work day; stand for thirty minutes at one time without interruption and stand for a total of two hours during an eight hour work day; walk for twenty minutes at one time without interruption and walk for a total of two hours in an eight hour work day; frequently reach overhead and in all other directions with both upper extremities; *occasionally handle, finger, and feel with both upper extremities*; frequently push/pull with the upper extremities; occasionally operate foot controls bilaterally; occasionally climb ramps and stairs; never climb ladders or scaffolds; never balance; occasionally stoop, kneel, crouch, and crawl; never tolerate exposure to unprotected heights or moving mechanical parts; tolerate occasional exposure to operation of a motor vehicle, extreme cold, vibrations, and extreme heat; tolerate frequent exposure to dust, odors, fumes, pulmonary irritants, humidity and wetness; tolerate moderate noise; and cannot walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single hand rail (Exhibit 13F).

(Tr. 26) (emphasis added).

The ALJ then explained that many aspects of this medical opinion were highly

persuasive, observing that:

> Ms. Hammon's opinion is supported by her observations that the claimant was unable to walk on her heels or toes without losing balance, the claimant lost her balance when tandem walking, and the claimant was only able to squat seventy percent; Ms. Hammon's clinical examination findings of 4/5 grip strength bilaterally; and Ms. Hammons's notation indicating the claimant was not able to distinguish between sharp and dull stimuli in each foot.

(Id.)

After explaining all of the reasons why NP Hammon's opinion was persuasive

the ALJ's ruling then stated: "However, Ms. Hammon's opinion is not consistent

with . . . ." (Id.) But this thought—which is essential to our understanding of why

the reaching limitations opined by NP Hammon were not adopted—was never

completed by the ALJ. Instead, the ALJ's decision took a sudden, unexpected turn

which rendered this critical part of the analysis a *non sequitur*. Rather than

addressing any inconsistencies in NP Hammon's opinion the balance of this sentence

contained the following curious tangent which apparently discusses some other

medical opinion:

> . . . Additionally, the opinion of the State agency medical consultant is consistent with all of the claimant's medical records, including clinical examination findings of normal musculoskeletal range of motion, normal strength, normal tone, no muscle wasting, a normal gait, a normal station, normal strength of the legs, intact vibratory sensation of

9

the feet, a normal stance, 5/5 strength of the upper and lower extremities, and no muscle atrophy of the extremities.

(Id.)

Based upon this entirely enigmatic entry, the ALJ stated that he "only finds Ms. Hammon's opinion persuasive to the extent it indicates the claimant is able to perform a range of work at the light exertional level." (Id.) What was completely missing from the ALJ's decision, however, was any legal, logical, or factual narrative which led to this conclusion.

This appeal followed. (Doc. 1). On appeal, Harrod challenges the adequacy of the ALJ's evaluation of the handling restrictions set forth in NP Hammon's medical opinion evidence. Finding that the decision, as written, is unintelligible on this crucial and potentially outcome determinative issue, we will remand this decision for further consideration by the Commissioner.

## III.   **Discussion**

### A.    **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200

(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,

11

135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether Simon is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on

12

legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

13

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.      Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

14

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and RFC. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's RFC. The RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL

15

1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

16

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes

17

giving controlling weight to any medical opinion." <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u> ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), <u>see</u> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." <u>Id</u>. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. <u>Revisions to Rules</u>, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the

18

persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. When presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). However, the ALJ must still fully articulate the basis of this medical opinion evaluation. Nothing in the current regulations in any way "discount[s] the longstanding legal principles which called for a clear articulation of the ALJ's rationale in making a disability determination." Kenyon v. Saul, No. 1:20-CV-1372, 2021 WL 2015067, at *9 (M.D. Pa. May 19, 2021). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066).

These legal benchmarks guide us in the instant case.

19

**D.    This Case will be Remanded for Further Consideration by the Commissioner.**

As we have noted, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. This cardinal tenet of Social Security practice applies to several types of assessments made by ALJs. For example, it is well settled that "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Therefore, an ALJ must "explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Moreover, these principles apply with particular force to the ALJ's analysis of medical opinions. In this regard, it is well settled  that "when evaluating medical opinions 'the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.'" Mercado v. Kijakazi, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)).

20

In the instant case, we conclude that due to a profound, but perhaps unintended omission, the ALJ's decision provides no reason for rejecting the occasional handling limitations opined by NP Hammon, limitations which the Vocational Expert testified would bar Harrod from returning to her past work as a hostess, employment which required frequent handling. Regrettably, the ALJ's one-sentence critique of NP Hammon's medical opinion is unintelligible and makes no legal, logical, factual or grammatical sense. Because this essential part of the ALJ's ruling makes no sense, the decision as a whole defies reasoned, informed review.

The complete failure to provide a rationale for discounting this medically opined limitation which the ALJ was told would preclude Harrod from performing her past work is error and we cannot treat this error as harmless in the facts of this case. In this regard, "we apply harmless error analysis cautiously in the administrative review setting." Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Thus:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" Hyer v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), report and recommendation adopted, No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018).

On the unique facts of this case, we find that the ALJ's unintelligible analysis of the handling limitations opined by NP Hammon implicates Harrod's substantial rights since it likely affects the outcome of the proceedings. Several factors combine to define this as a potentially prejudicial error. First, the ALJ's decision rests upon a Step 4 determination that she can perform all of the functions of her past work as a hostess. Second, the Dictionary of Occupational Titles clearly states that the job of a hostess entails frequent handling. Third, the Vocational Expert in this case testified that if Harrod was limited to only occasional handling she could not work as a hostess. Finally, NP Hammon opined that Harrod was confined to only occasional handling, an opinion which was consistent with the limitations found by Harrod's treating physician, Dr. Kannarkatt. Thus, every medical expert who actually treated or examined Harrod restricted her to less than frequent handling.

On these facts, it was incumbent upon the ALJ to say *something* about why NP Hammon's handling restriction was unpersuasive in order to sustain this Step 4 denial of Harrod's claim, and the decision, as written, says *nothing* that can be understood since this portion of the analysis is incoherent. In sum, more is needed

22

here by way of explanation before the ALJ can reject the opinion of a medical source who specifically found that Harrod could not return to the physical demands of her past work.

Therefore, we conclude that the ALJ's decision in this case is not supported by substantial evidence, as the ALJ did not offer an adequate explanation as to what parts of the consultative examiner opinions were persuasive. Accordingly, we will remand this case to the Commissioner for further consideration of this evidence. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED to the Commissioner for further consideration.

An appropriate order follows.

<u>*/s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: July 20, 2026

23